IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-00209-F

| | |
|---|---|
| LARRY D. MITCHELL, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-25, DE-27] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Larry D. Mitchell ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). Plaintiff filed a response to Defendant's motion [DE-30], and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the matter be remanded for further consideration.

## I. STATEMENT OF THE CASE

Claimant filed an application for a period of disability and DIB on April 5, 2012, alleging disability beginning March 28, 2012. (R. 24, 162-67). The claim was denied initially and upon reconsideration (R. 24, 83-104). A hearing before an Administrative Law Judge ("ALJ") was held on November 7, 2013, at which Claimant, represented by counsel, and a vocational expert ("VE")

appeared and testified. (R. 38-82). On February 3, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 21-37). The Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process, as set forth in 20 C.F.R. § 404.1520, under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. (R. 33). At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date. (R. 26). Next, the ALJ determined Claimant

3

had the severe impairments of degenerative disc disease of the lumbar spine with disc protrusions/sciatica; obesity; bilateral tinnitus/hearing loss; headaches; and left upper extremity paresthesia. *Id.* The ALJ also found Claimant had the non-severe impairments of diabetes mellitus type II, seasonal allergies, gastroesophageal reflux disease, mixed hyperlipidemia, essential hypertension, and angina pectoris. (R. 26-27). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 27-28).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform less than a full range of light exertional work with the following limitations: a sit/stand option at will/as needed, but would not be off task more than 10% of the day; occasionally push, pull, and/or operate foot controls with the left lower extremity; no more than frequent reaching, handling, fingering, pushing, pulling, and/or operating hand controls with the left upper extremity, which is the non-dominant upper extremity; no more than occasional climbing of ramps and stairs, but no climbing ladders, ropes or scaffolds; no more than occasional balancing, stooping, kneeling, crouching, and/or crawling; must avoid concentrated exposure to noise and hazards, such as dangerous moving machinery and unprotected heights; and the option to use an assistive device to ambulate, if needed. (R. 23-28). In making this assessment, the ALJ found Claimant's statements about his limitations "not entirely persuasive of disability." (R. 29). At step four, the ALJ concluded Claimant is unable to perform any of his past relevant work. (R. 31-32). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 32-33).

Claimant alleges (1) the ALJ erred by failing to conduct a function-by-function analysis, as required by S.S.R. 96-8p; and (2) remand is necessary in light of Claimant's award of benefits on a subsequent application. Pl.'s Mem. [DE-26] at 11-14.

## V. DISCUSSION

### A.    The ALJ's RFC Analysis

Claimant argues that the ALJ failed to conduct the requisite function-by-function analysis, i.e., make specific findings regarding Claimant's ability to stand, walk, lift, or carry, but rather simply recited the evidence in the file without providing a narrative discussion of how the evidence supports the ALJ's conclusions. Pl.'s Mem. [DE-26] at 11-13. An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional

5

limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7. In *Mascio v. Colvin*, the Fourth Circuit explained that S.S.R. 96-8p requires the ALJ to "'first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The Ruling further requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, — F.3d —, 2016 WL 3349355, at *2 (4th Cir. June 16, 2016) (quoting *Mascio*, 780 F.3d at 636) (quoting S.S.R. 96-8p).

Here, the ALJ failed to perform an explicit function-by-function analysis. (R. 28-31). However, the Fourth Circuit rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted). Defendant argues that the ALJ's RFC assessment fully addresses Claimant's abilities and is supported by an appropriate narrative discussion of the evidence. Def.'s Mem. [DE-28] at 10-13. Therefore, despite the ALJ's failure to conduct the function-by-function assessment, the court must look to the ALJ's RFC discussion to determine whether it otherwise provides a sufficient basis for meaningful review.

The ALJ determined Claimant could perform a limited range of light work, which involves

6

lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b). Specifically, the ALJ imposed the following additional restrictions: a sit/stand option at will/as needed, but would not be off task more than 10% of the day; can occasionally push, pull, and/or operate foot controls with the left lower extremity; no more than frequent reaching, handling, fingering, pushing, pulling, and/or operating hand controls with the left upper extremity, which is the non-dominant upper extremity; no more than occasional climbing of ramps and stairs, but no climbing ladders, ropes, or scaffolds; no more than occasional balancing, stooping, kneeling, crouching, and/or crawling; avoid concentrated exposure to noise and hazards, such as dangerous moving machinery and unprotected heights; and the option to use an assistive device to ambulate, if needed. (R. 23).

In assessing Claimant's RFC, the ALJ first summarized Claimant's hearing testimony: he was laid off in 2012 due to problems with his back; he has pain in his lower back and left leg if he stands too long; his back hurts and lying down worsens the pain; he has been using a prescribed cane since last year and wears a back brace; he gets injections in his hips, three on each side; he has a TENS unit for his left leg pain; he has problems with his left arm including numbness and tingling, but is right hand dominant; he would not try to lift 15 pounds; he was treated in 2013 at the emergency room for sciatica; injections and other treatments have not helped; he just started physical therapy; he can stand 20 minutes at a time and sit for 30 minutes at a time; and he sits on the couch for most of the day, but can drive occasionally. (R. 29). The ALJ then found that while Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of his symptoms were not

7

"entirely persuasive of disability." *Id.*

The ALJ next discussed the medical evidence. He discussed Claimant's pain treatment with Dr. Gootman: in April 2012, Claimant was diagnosed with chronic pain syndrome low back pain and lumbar spondylosis, his pain was "moderately uncontrolled," an MRI demonstrated multiple disc bulges abutting the L4 and S1 nerve root, and his pain medications were adjusted; in May 2012, Claimant's pain control was "slightly uncontrolled"; and on July 19, 2013, Claimant's pain was "slightly uncontrolled," Claimant requested a follow up in two months due to a trip out of town for his mother's surgery, Dr. Gootman noted Claimant's co-morbid conditions included obesity, diabetes, and headaches, and although Claimant had been prescribed several medications, his urine drug screen demonstrated the absence of the prescribed medication Oxycodone and showed the presence of a non-prescribed medication, Hydrocodone. *Id.*

The ALJ discussed in detail a consultative examination by Dr. Mack on June 14, 2012. Claimant presented with complaints of low back pain radiating to the left lower extremity, intermittent for one year, left hand weakness and paresthesia for about one month intermittently, and tingling in the distribution of the ulnar nerve; Claimant stated he was treated initially with physical therapy, then at a pain clinic with injections, without therapeutic relief, and he currently used a TENS unit, which provided some relief; he could walk without assistance, but used a cane on occasion for security; and his height and weight were listed as 69 inches and 247 pounds, which corresponds to an obese body mass index ("BMI") of 36.5. (R. 29-30). Upon examination, Claimant's neck was nontender with full range of motion; he acknowledged joint pain, stiffness, back pain, and weakness, but denied cramps, swelling and myalgia; he admitted to depression, but denied anxiety or suicidal thoughts; he admitted to sensory changes and paresthesia, but denied weakness, tremor, seizure,

spasm, memory loss, syncope, vertigo or clumsiness; he stated he had seasonal allergies and indigestion, but denied heartburn; he was well appearing, in no distress, and was oriented x3 with normal mood and affect; he had no muscle tenderness, atrophy, or fasciculations, and could sit, stand, and ambulate without difficulty; he mounted the examination table without difficulty, but was not able to squat, though he had a steady gait and normal station with muscle strength at 5/5 bilaterally; he could raise his arms overhead, pinch, grasp, and manipulate objects with his hands; and his range of motion in the back was decreased but otherwise normal and his spine was normal without deformity or tenderness. *Id.* Claimant was diagnosed with chronic lumbar pain with degenerative disc disease and lumbar spondylolsis, sciatica, minimal response to therapy and a guarded prognosis, intermittent left hand weakness, and parasthesias; Dr. Mack noted the upper extremity issue was new, which she suspected was cervical spine disc disease with guarded prognosis; she noted Claimant used a simple cane for walking and balance and opined this device was needed for additional support and feelings of security but was not prescribed by a physician; Dr. Mack noted Claimant was able to walk a block at a reasonable pace on a rough/uneven surface and to climb a few steps at a reasonable pace with the use of a single handrail, had full use of the upper extremity for carrying objects, was unimpaired in his ability to stand, hear, and speak, moderately impaired in his ability to sit and travel, and mildly impaired in his stamina and ability to move about, lift, carry, and handle objects. *Id.*

The ALJ mentioned Claimant's several emergency room visits from December 2011 through September 2013, noting Claimant presented with complaints of sciatica, treated with injection and narcotic pain medicine; lumbago, treated with medication; headache and tinnitus, treated with anti-inflammatory pain medicine and aspirin; and a CAT scan of the head was unremarkable. (R.

9

30). The ALJ noted that the remainder of the medical evidence was provided by the VA, dated May 31, 2012 through September 27, 2013: Claimant presented with complaints of tinnitus, diagnosed and treated for dysfunction of the Eustachian tube; degeneration of the lumbar spine, treated conservatively; poorly controlled diabetes mellitus type II, seasonal allergies, obesity, gastroesophageal reflux disease, mixed hyperlipidemia, essential hypertension, angina pectoris with negative chest pain, and normal maladies; Claimant received physical therapy, a back brace, and pain management through medications and injections; radiological studies of the lumbosacral spine performed in September 2013 demonstrated mild scoliosis and lower lumbar degenerative disc disease; and an MRI of the lumbar spine indicated mild-to-moderate multilevel degenerative disc disease including free disc fragment at L4-L5. *Id.*

The ALJ next weighed the opinion evidence. He afforded limited weight to the opinion of Dr. Gardner, who reviewed Claimant's medical records upon reconsideration of his application for disability benefits. (R. 31). The ALJ rejected Dr. Gardner's opinion that Claimant was capable of medium work with occasional use of his left lower extremity for pushing and pulling (including operation of foot controls), frequent reaching and handling with his left upper extremity, and the need to avoid concentrated exposure to noise and hazards, but no postural limitations. *Id.* The ALJ explained his reasoning as follows:

> the totality of the records confirm the claimant would rightly be limited to light-level work with a sit/stand option and occasional postural activities, excluding ladders, ropes or scaffolds. While it is unclear if he truly requires a cane/assistance device for ambulation, the undersigned has afforded him the benefit of the doubt, as he does have severe pathology for his lower back pain with radiculopathy. However, he reported to the consultative examination that he only uses it at times. Despite complaints of chronic pain in his lower back, he appeared in no distress, ambulated with a normal gait; he could sit, stand and ambulate without difficulty. He mounted the examination table without difficulty. He was not able to squat. He had a steady

gait, normal station with muscle strength at 5/5 bilaterally. He could raise his arms overhead, pinch, grasp and manipulate objects with his hands. Range of motion for the back was decreased, otherwise normal. His spine was normal without deformity or tenderness.

*Id.* The ALJ afforded great weight to the opinion of Dr. Mack and explained that

> [w]hile her diagnosis and prognosis statement was not particularly specific from a functional standpoint, she did note no greater than moderate impairment; she noted the assistive device was used for walking and balance, but not prescribed by a doctor. She was not able to definitely diagnosis his left upper extremity problem, but noted it was likely cervical in nature. She observed the claimant presented with a steady gait, normal station, and 5/5 muscle strength bilaterally (Ex. C4F). Overall, her findings do not contradict the claimant's residual functional capacity, but do tend to undermine the DDS assessment.

*Id.*

In arguing that the ALJ erred in failing to conduct the function-by-function analysis, in particular with respect to Claimant's ability to stand and walk, Claimant notes his testimony regarding his back pain, multiple injections, the use of a cane, his ability to stand for approximately 20 minutes before needing to sit down, sit for 30 minutes before needing to stand up and walk around some, and his use of a back brace. Pl.'s Mem. [DE-26] at 12 (citing R. 48-49, 53, 59-60, 65-66). Claimant also notes his failure to obtain relief from numerous courses of therapy, including physical therapy, injections, medications, and the use of a TENS unit, and that his activities of daily living were limited. *Id.* (citing (R. 461)). Claimant asserts that the ALJ relied too heavily on Dr. Mack's consultative examining opinion, ignored contrary evidence from Claimant's treatment providers, and noted evidence indicating Claimant was taking unprescribed medication when treatment notes demonstrated his medications had actually been changed earlier in the month. *Id.* (citing R. 437). The court agrees that the presence of this contradictory evidence in the record, in the absence of a function-by-function analysis, frustrates the court's review of the ALJ's RFC

11

determination.

The reasoning for the ALJ's RFC assessment lies largely within his discussion of the opinion testimony and relies heavily on Dr. Mack's consultative assessment. However, Dr. Mack's one-time examination occurred on June 14, 2012, over a year and a half before the ALJ issued his decision, and there is subsequent evidence in the record, some of which was noted by the ALJ, that contradicts Dr. Mack's findings and indicates Claimant's condition was continuing to deteriorate. The ALJ gave little attention to the VA records, despite the fact that Claimant received treatment at the VA from June 2012 through September 2013, and failed to note abnormal findings, including a positive straight leg raising test on the left (R. 441), minimal effectiveness from mediation and a TENS unit (R. 390), mild atrophy of and unable to feel touch in the left quadriceps (R. 392), gait affected by a right leg limp and pain with flexion, extension, and bending (R. 460), an arthralgic, stiff gait and use of cane (R. 518), and guarded movements and use of cane (R. 603).

There is also a notable absence of discussion from the ALJ regarding the effects of Claimant's largely uncontrolled pain. A claimant's symptoms, including pain, are considered to diminish the capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). Claimant made frequent visits to the VA reporting that his medications and other treatments were not effective. (R. 390, 497-98, 520, 537, 563, 603, 619, 702). Furthermore, as the ALJ acknowledged, Claimant made several emergency room visits related to his back pain (R. 30) and had "severe pathology for his lower back pain with radiculopathy" (R. 31). Given this contradictory evidence, it is unclear whether the ALJ would have found that Claimant could still perform light work with the given restrictions had he not unduly focused on Dr. Mack's consultative exam. *See*

*Ammons v. Colvin*, No. 5:14-CV-00885-BO, 2016 WL 775761, at *3 (E.D.N.C. Feb. 25, 2016) (unpublished) ("Because the ALJ's decision contains no assessment of plaintiff's ability to perform relevant functions in the presence of contradictory evidence, the Court is unable to conduct a meaningful review.").

Defendant argues that the ALJ's inclusion of "a sit/stand option at will/as needed" and "an option to use of [sic] assistive device to ambulate, if needed" addresses Claimant's assertions of error in this regard. (R. 28); Def.'s Mem. [DE-28] at 11-12. Importantly, the ALJ also included the caveat that the sit/stand option would not cause Claimant to be off task more than 10% of the day. (R. 28). Claimant testified that he mostly sits on his couch during the day and utilizes a support piece that goes on his couch and helps him sit up straight. (R. 59-60). He also testified that after sitting for approximately 30 minutes he has to get up, lean his back against the wall to help straighten out his back, and move around before sitting down again. (R. 65-66). The VE testified in response to questioning by Claimant's attorney that if a person had to do more than just stand up and sit down at the workspace, such as walking around away from the workspace even for five minutes a few times a throughout the day, and it caused the person to be away from the workstation more than 10% of the day, it would preclude the jobs listed by the VE. (R. 78-79). This is significant because the VE only found two jobs in the light category that would accommodate the limitations imposed in the RFC. (R. 33). Moreover, although the ALJ found Claimant's testimony to be "not entirely persuasive of disability" (R. 29), his decision fails to make clear what portions of Claimant's testimony he found credible or not credible and why, further frustrating meaningful review.[1] *See*

---

[1] Further evidence of the ALJ's failure to properly explain his credibility finding is found in the ALJ's citation to evidence of a drug screen indicating the presence of a non-prescribed medication. (R. 29). However, as Defendant concedes, Claimant's medications had been changed by a treatment provider at the VA earlier in the month (R. 437). (continued...)

13

*Mascio*, 780 F.3d at 640 (finding remand necessary where the ALJ failed to explain "how he decided which of [the claimant's] statements to believe and which to discredit"); *see also Monroe*, 2016 WL 3349355, at *10 (finding error where the ALJ "failed to 'build an accurate and logical bridge from the evidence to his conclusion' that [the claimant's] testimony was not credible.") (citation omitted). To the extent the ALJ discounted Claimant's testimony due to Dr. Mack's findings on one occasion and the fact that Claimant told Dr. Mack he only used his cane at times, the record indicates that Claimant was later prescribed a cane and a back brace (R. 387) and his testimony, along with evidence in the medical records, could support a finding that Claimant did require the use of his cane to ambulate (R. 53, 498, 510, 513, 518, 566, 586, 603, 613, 710). It is far from clear that Claimant's need for a supportive device while sitting, use of a back brace, reliance on a cane for ambulation, and need to walk around intermittently would not take him off task more than 10% of the day, and the ALJ fails to adequately account for his conclusion otherwise.

In sum, the ALJ's failure to conduct a function-by-function analysis in this case requires remand where there is largely unaddressed evidence in the record that undermines the evidence relied upon heavily by the ALJ, the ALJ's analysis of Claimant's credibility is lacking and further frustrates the court's review of the RFC determination, and due to the extremely limited number of jobs available to an individual with Claimant's impairments, any error has great potential to prejudice the Claimant. Accordingly, it is recommended that this matter be remanded for further proceedings.

---

[1](...continued)
Def.'s Mem. [DE-28] at 12. Defendant argues this was a harmless error, because the doctor did not know of Claimant's medication change. *Id.* This defense misses the point, because it is the ALJ's understanding of the evidence that is material here, and without a sufficient explanation of the ALJ's credibility determination, the court cannot properly determine whether the error was harmless.

## B. The Subsequent Favorable Decision

It is not necessary to reach Claimant's argument that the case should be remanded based on new and material evidence in the form of a subsequent award of benefits for the period beginning the day immediately following the ALJ's unfavorable determination in this case. Pl.'s Mem. [DE-26] at 13-14. However, this court has recognized under certain circumstances that remand is warranted where, as here, "there is little or no intervening gap between a denial of disability and a finding of disability." *Whittington v. Colvin*, No. 5:13-CV-243-FL, 2014 WL 3818302, at *7 (E.D.N.C. July 15, 2014) (unpublished) (collecting cases), *adopted by* 2014 WL 3828169 (E.D.N.C. Aug. 4, 2014). The subsequent decision, whether or not it provides independent grounds for remand, at a minimum lends support for the determination to remand because it "calls into question whether all material evidence was considered in the former determination." *Smith v. Astrue*, No. 5:10-CV-219-FL, 2011 WL 3905509, at *3 (E.D.N.C. 2 Sept. 2011) (unpublished).

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-25] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-27] be DENIED, and the matter be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **July 25, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or

return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the __11__ day of July 2016.

Robert B. Jones, Jr.
United States Magistrate Judge

16